IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBIN ALLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUSQVARNA PROFESSIONAL PRODUCTS, INC.,<br><br>Defendant. | Case No. 3:24-cv-896<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, individually and on behalf of all other persons similarly situated, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant Husqvarna sold some of the most expensive gas-powered grass trimmers on the market. Recently, however, Defendant told consumers to "immediately stop using" them because they are dangerous. There have been reports of fires and at least one injury caused by a defect in these products. A gas-powered grass trimmer that cannot be used is just a big, worthless piece of metal junk.

2. Defendant will not give customers their money back for these defective products. Instead, Defendant implemented a deficient recall that allows it to *say* it is doing the right thing, when in fact the primary objective is to protect its bottom line. First, any requests for refunds are denied. A consumer's only option is to have the product repaired by an authorized dealer, regardless of whether the consumer wants the product repaired, or trusts that the repair solves the

problem. Also, the repair option is useless to anyone who no longer owns the product or who lives in a rural area far from an authorized dealer.

3. Second, by design, the recall received very little publication, with the result that the response rate has been low. An offer to repair the products does little good when Defendant does the bare minimum possible to let people know about the offer. But that approach benefits Defendant by minimizing the cost and burden of the recall.

4. Accordingly, Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's grass trimmers are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## **PARTIES**

5. Plaintiff Robin Allen is, and has been at all relevant times, domiciled in Galway, New York. Plaintiff may be referred to in this complaint as a "New York Plaintiff."

6. Ms. Allen purchased and owned a Husqvarna-brand grass-trimmer, model number 330LK, SKU 970514501, which she bought in 2022 from a Lowe's store in New York. Lowe's is an authorized dealer of Husqvarna products.

7. Before purchasing the product, Ms. Allen reviewed the floor model of the product on the sales floor and the box that the product came in. Neither source disclosed the existence of the defect. The fact that the grass trimmer is defective is material to Mr. Allen. If the product packaging had disclosed the defect, then Ms. Allen would not have purchased the product, or would not have purchased it on the same terms. Ms. Allen experienced the defect at issue in this case, when the grass trimmer overheated and smoked.

8. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this action that would create a conflict of interest with the proposed class members.

9. Defendant Husqvarna Professional Products Inc. is a Delaware corporation that maintains its principal place of business in North Carolina.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and the proposed Class contains more than 100 members. Defendant's principal place of business is located at 9335 Harris Corners Parkway Suite 400, Charlotte, NC 28269.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant's principal place of business is in this District. Defendant's decisions concerning the design, marketing, labeling, and sale of the products at issue originated in this District.

## COMMON FACTUAL ALLEGATIONS

12. **Product at issue:** the tools at issue in this case are gas-powered grass trimmers made by Husqvarna with the following Model #'s and SKU#'s:

| Model # | SKU# |
|---|---|
| 330LK | 970514501<br>970514502<br>970514503<br>970514504<br>970545001 |
| 130C | 970514301<br>970514302<br>970514303 |

| | 970694601 |
| | 970694701 |
| 130L | 970514401 |
| | 970514402 |
| | 970514403 |
| | 970694801 |
| | 970694901 |

13. The grass trimmers are orange and gray. The word "Husqvarna" and the model are printed on the motor housing. The SKU number is printed on the serial number tag on the bottom side of the motor housing.

14. Approximately 403,000 units were sold in the United States.

15. The products were sold at major retailers like Lowes, Tractor Supply, and Amazon from approximately October 2021 through November 2023 for between $250-$300.

16. **Defect at issue:** According to Defendant, "incorrect wiring in the ignition module on the recalled grass trimmers can cause an electrical spark or arcing, posing a fire hazard if gas is on or near the unit." The defect has caused fires and is associated with one reported injury from a consumer who suffered burns when attempting to extinguish a fire caused by the defect.

17. Defendant has warned that "Consumers should immediately stop using the recalled grass trimmers …." Accordingly, by Defendant's own admission, the products would not pass without objection in trade under the contract description; were not fit for the ordinary purpose for which the products would be used; and did not conform to the promises or affirmations of fact made on the container or label. In other words, the products are worthless.

18. The cause of the defect is the same for all of the products at issue.

19. **Relevant time period:** All of the omissions at issue here were uniformly and consistently made at all times during the last three years, at least. There were no material changes to the product packaging or other consumer facing materials during the relevant period.

20. **The omissions:** Defendant described the products as gas-powered string trimmers and weed eaters. However, it failed to disclose that due to a defect in the materials, workmanship, and/or design, the products have faulty wiring that lead to electrical arcing and a fire hazard.

21. The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

22. Plaintiff and class members would not have bought the products or would not have bought them on the same terms if the defect had been disclosed. The materiality of the defect also is demonstrated by the existence of the recall.

23. Defendant did not disclose the defect on the product packaging, the website product pages, the owner's manual, or in any other customer-facing document. Sales personnel and customer service representatives were not instructed to disclose the defect.

24. At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the products were defective. Defendant had exclusive knowledge of that fact.

25. Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, by displaying the products and describing their features, the product packaging and product webpages implied that the products were suitable as grass trimmers, without disclosing that they had a critical safety-related defect that caused a fire hazard.

26. For example, the product webpage on Husqvarna's website said this about the model 330LK grass trimmer:



27. The product webpage went on to describe features like "Intuitive controls," an "Auto return stop switch," and "air purging." The webpage also provided numerous details about the product specifications such weight, exhaust emissions, and engine size. However, there was no disclosure of the wiring defect at issue here.

28. Similarly, all of the boxes that the products were sold in had the Husqvarna brand name and generally conveyed the impression that the product was suitable as a grass trimmer, but did not disclose the existence of the wiring defect.

29. Defendant had a duty to disclose the defect but intentionally did not do so.

30. **<u>Defendant's Pre-sale Knowledge of the Defect</u>:**

31. At the time of sale, and in no event later than January 2022, Defendant knew about the defect and knew with certainty that it would manifest during the product's expected useful life.

32. Before the products were first launched, or shortly thereafter, Defendant knew about the defect as a result of pre-release testing.

33. After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, and field reports.

34. Defendant knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents. Using Weibull analysis and other statistical tools commonly used in the manufacturing industry, Defendant makes projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

35. The customer complaints about the products also would have put Defendant on notice of the defect and contributed to its pre-sale knowledge of the defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the products was unusually high relative to the total number of products sold. The fact that owners made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the products. The reports and complaints from owners were similar enough to put Defendant on notice that the incidents described were the result of a defect, and that the products were experiencing unusually high levels of complaints.

36. Defendant also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant

information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

37. **Presuit notice**: On August, 5 2024, Plaintiff provided pre-suit notice via certified mail in a letter that complied with all applicable notice requirements. The notice was sent on behalf of Plaintiff and putative class members. Defendant received that notice and had its counsel provide a response a month later.

38. **The Recall Does Not Render This Lawsuit Moot**:

39. The recall does not render this lawsuit moot because it does not provide all of the relief available in this lawsuit.

40. No refunds are provided under the recall.

41. A class member's only recourse is to find an authorized dealer for a repair. That remedy is useless to someone who does not trust the product, does not still own the product, or does not live near an authorized dealer, such as rural class members.

42. The recall does not provide for statutory damages available under consumer protection laws, or disgorgement of profits under an unjust enrichment theory.

43. The recall was only briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and the response rate has been low.

44. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## CLASS ALLEGATIONS

45. **Class Definition:** Plaintiff seeks to represent the following classes:

Nationwide Class: all people in the United States who purchased the Product within the applicable statute of limitations.

Multi-state Consumer Protection Class: all people who purchased the Product (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; (4) in the states of Illinois and New York within the applicable statute of limitations.

New York Class: all people in New York who purchased the Product within the applicable statute of limitations.

46. Pursuant to Fed. Civ. P. 23(c)(1)(C), each of the above class definitions is a placeholder that may be altered or amended at any time before final judgment. Subject to additional information obtained through further investigation or discovery, the above-described Classes may be modified or narrowed as appropriate, including with the use of multi-state subclasses to account for material variations in state law, if any.

47. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

48. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, the number of putative class members is believed to be so numerous that joinder of all members is impractical, and at least higher than 40.

49. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case.

Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a. Whether Defendant knew or should have known of the defect at issue in this case, and if so, when they discovered the defect;

   b. Whether the defect at issue in this case would be material to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

   c. Whether Defendant failed to disclose and concealed the existence of the defect from potential customers;

   d. Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here.

50. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct.

51. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class.

52. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of

decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

## CAUSES OF ACTION

### COUNT I
### Violation of the New York Deceptive Trade Practices Act,
### New York Gen. Bus. Law § 349, *et seq*

53. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

54. Plaintiff brings this cause of action individually and on behalf all other class members.

55. By reason of the acts set forth above, Defendant has been and is engaged in deceptive acts or practices in the conduct of a business, trade, or commerce in violation of New York's General Business Law § 349.

56. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

57. The public is likely to be damaged because of Defendant's deceptive trade practices or acts.

58. Defendant directs the conduct at issue here at consumers.

59. Defendant's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York purchased the life insurance policies at issue here.

60. As a result of Defendant's use of employment of deceptive acts or business practices, Plaintiff and each of the other Members of the class have sustained damages in an amount to be proven at trial.

61. Plaintiff seeks on behalf of herself and all putative class members, all relief available under GBL § 349.

## COUNT II
### Violation of the New York Deceptive Trade Practices Act, New York Gen. Bus. Law § 350, *et seq*

62. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

63. Plaintiff brings this cause of action individually and on behalf all other class members.

64. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

65. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

66. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

67. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed towards consumers. Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the Product.

68. Defendant's omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

69. Defendant's omissions have resulted in consumer injury or harm to the public interest.

70. As a result of Defendant's conduct at issue here, Plaintiff and class members have suffered and continue to suffer economic injury.

71. As a result of Defendant's violations, Plaintiff and class members have suffered damages due to said violations because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect and are not safe for use; (b) they paid a premium price in the amount of the full purchase price of the Products; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

72. Plaintiff seeks on behalf of herself and all putative class members, all relief available under GBL § 350.

## COUNT III
### Breach of Implied Warranty

73. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

74. Plaintiff brings this cause of action individually and on behalf all other class members.

75. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

76. Defendant breached its warranty implied because the products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

77. Plaintiff purchased the product from an authorized dealer who was an agent of the manufacturer. Plaintiff was the intended consumer of the product, not the authorized dealer. The implied warranty was intended to benefit the consumer, not the authorized dealer.

78. Plaintiff and class members were third party beneficiaries of an implied warranty between Defendant and its authorized dealers.

79. Defendant and its authorized dealers, including Lowe's, have valid and binding contracts for the distribution and sale of Defendant's products. An implied term of that contract is that the products that Defendant provides to its authorized dealers would pass without objection in the trade under the contract description, are adequately labeled, and fit for their ordinary purpose. The contract between Defendant and its authorized dealers, including the contract with Lowe's, is intended to benefit consumers, because if consumers are not satisfied with Defendant's products, then that defeats the primary purpose of the agreement between Defendant and its authorized dealers. Therefore, the intended benefit to consumers is not incidental, but is a central and immediate purpose of the contract.

80. Defendant was aware of remote customers' requirements that products work safely and was aware that remote customers generally expected the product to meet minimum standards.

81. An exception to any purported privity requirement applies because this action challenges representations made on the product packaging.

82. Plaintiff and Members of the Classes purchased the products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

83. The products were defective when it left the exclusive control of Defendant.

84. Plaintiff and class members did not receive the goods as warranted.

14
Case 3:24-cv-00896-FDW-SCR    Document 1    Filed 10/09/24    Page 14 of 19

85. The products were not sold on an "as is" or "with all faults" basis.

86. Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

87. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and class members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

88. Plaintiff seeks all relief available under this cause of action.

## COUNT IV
**Unjust Enrichment**

89. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

90. Plaintiff brings this cause of action individually and on behalf all other class members.

91. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

92. The unjust enrichment claims are premised in part on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

93. Plaintiff and the class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

94. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

95. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the products were dangerous. This caused injuries to Plaintiff and class members because they would not have purchased the products or would have paid less for them if the true facts concerning the products had been known.

96. Defendant is not an innocent third party but instead directly benefited from the unlawful conduct alleged here. Defendant benefits financially from its distributor's sales tactics and clearly retained financial benefits from consumers purchasing the products at issue. The relationship between Plaintiff and Class Members detriment and Defendant's benefit flows from the challenged conduct alleged in this Complaint.

97. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the products.

98. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

99. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the products at issue.

100. As a direct and proximate result of Defendant's actions, Plaintiff and class members have suffered in an amount to be proven at trial.

101. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

102. Plaintiff and members of the Class are entitled to equitable relief because no adequate remedy at law exists.

103. Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

104. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fail to sufficiently adduce evidence to support an award of damages.

105. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with his unjust enrichment claim.

106. Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

107. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

108. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) An award of statutory damages to the extent available;

(e) For punitive damages, as warranted, in an amount to be determined at trial;

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: October 9, 2024                        Respectfully submitted,

                                                   */s/ J. Hunter Bryson*
                                                   J. Hunter Bryson
                                                   N.C. Bar No.: 50602
                                                   **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                                                   900 W. Morgan St.
                                                   Raleigh, NC 27603
                                                   Tel: 919-600-5000
                                                   Fax: 919-600-5035
                                                   Email: hbryson@milberg.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (pro hac vice forthcoming)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(pro hac vice forthcoming)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff*